Douglass
v
Peele and
others.

---

## Douglass *vs.* Peele and others.

Two mortgages for different sums were executed by the same
mortgagor to the same mortgagee, of the same date, and upon the
same premises. A, the assignee of one mortgage, knew at the time
the mortgages were executed of the purpose for which they were ex-
ecuted, and that the mortgage assigned to him was to be deemed
the junior lien, and to make it appear so upon the record, the other
mortgage was recorded fifteen minutes first. The assignment of
one mortgage was made to A, by the mortgagee, and some time af-
terwards the assignment of the other mortgage was made to B,
being the same person, for whose benefit A knew that it was exe-
cuted.—Held that the mortgage assigned to B, should be wholly
paid out of the mortgaged premises in preference to the mortgage
assigned to A.

Though parol evidence is not admissible to vary the terms of a written instrument, but such evidence is admissible to show facts, *dehors* the instrument, though it should vary the legal effect of such instrument.

BILL to foreclose a mortgage. The facts presented by the pleadings in this case are, that Thomas Peele, one of the defendants, executed to George W. Bush, two mortgages upon the same piece of property, both dated and executed at the same time, September 18, 1835, one to secure the payment of $1,250, and the other to secure the payment of $2,500. Both mortgages were given for different portions of the purchase money of the mortgaged premises, and both were recorded September 21, 1835, but the mortgage for $2,500 was recorded earlier by fifteen minutes than the other. The mortgage for $1,250 was assigned by the mortgagee to the complainant, on the day of the recording thereof, viz. 21st September, 1835. The other mortgage was assigned by the mortgagee to the defendant Horace Bush, September 3, 1836. Neither of the assignments were recorded.

George W. Bush, the mortgagee, was examined as a witness in the cause, and if his testimony is admissible it proves the farther facts, that the mortgaged premises in equity belonged to Horace Bush, the father of the mortgagee, though the title was taken in the name of the son, for the more convenient transfer upon sale. The father wished the son to sell the property; and George W. Bush, the son, with a view of obtaining a good sale, informed the complainant that if he would assist him in selling the property, he would allow the complainant one half of the amount for which it might be sold, over twenty-

five hundred dollars. A sale was effected, by the assistance of the complainant, for $5,000 to the defendant Peele. The complainant was informed that Horace Bush was in fact the owner of the land. Upon the sale, Peele executed the two mortgages above mentioned, to George W. Bush, simultaneously, for portions of the purchase money. The mortgage for $2,500 was intended, by both the complainant and G. W. Bush, for the benefit of Horace Bush, the equitable owner of the land, and to secure to him, as a prior lien, the payment of so much of the purchase money. The mortgage for $1,250 was intended to secure the complainant for the compensation which he had earned for assisting in disposing of the property, and was to be made a junior lien. George W. Bush received his $1,250 in cash. He took both of the mortgages to the clerk's office for record, and to carry out the previous arrangement between himself and the complainant, and for the purpose of giving to the $2,500 mortgage the prior lien, and with knowledge and approbation of the complainant, he caused the $2,500 mortgage to be placed upon record fifteen minutes earlier than the other, and after having also left the other for record, assigned it the same day to the complainant. George W. Bush retained the $2,500 mortgage as agent for his father, and received some payments upon it, which he applied to his own use, and finally assigned it to his father nearly one year after its date.

·This bill is filed by the complainant to foreclose the mortgage for $1,250, and Horace Bush is made a defendant as a *subsequent* incumbrancer, and is the only defendant who answers. The cause comes on to a hearing upon pleadings and proofs.

*C. L. Clarke* and *A. Gardiner* for complainant.

*S. Matthews,* for defendant Horace Bush.

THE VICE CHANCELLOR. The complainant insists in this case, that as the two mortgages were executed and delivered simultaneously to the same mortgagee for the purchase money of the mortgaged premises, each mortgage covering the whole of the mortgaged premises, that the mortgages were concurrent liens upon the premises before either of them were recorded ; and that inasmuch as both mortgages were executed to the same person, the recording of one of them a short time before the other, did not, as between the parties, change the nature of the liens, or give one a priority to the other. He insists, farther, that the mortgagee, being the owner of two simultaneously executed mortgages upon the same premises, by assigning one of them, whether it was the one first or last recorded, assigns and transfers all his interest in the mortgaged premises to such first assignee, so as to vest in such assignee a priority of lien as against the mortgage then held by the assignor. The complainant in this case insists, that from the fact that he is the first assignee of one of two mortgages executed at the same time, by the same mortgagor, to the same mortgagee, upon the same mortgaged premises, he is entitled by such assignment to have his mortgage first paid, or to have it preferred to the other mortgage held by the mortgagee at the time of making the first assignment. Perhaps, if there was nothing more in this case than the mere naked facts above suggested, the complainant might be deemed to be correct in his legal conclusions. It was doubtless competent for the holder of two simultaneously executed mortgages upon the

same premises, to indicate, by an assignment of one of them, whether the assignee should hold the mortgage so assigned, as the prior or junior lien. Such an indication or direction in an assignment, would doubtless control, if there was no equity in any third person to interfere with it. It may be, too, that the bare act of making an assignment of one mortgage under such circumstances, would give the assignee the preference over the mortgage still retained by the mortgagor, whether such last mortgage was first recorded or not, if the assignee was not informed, at the time, of any equity which would give the last mortgage the preference. The recording act was doubtless passed to protect *bona fide* purchasers— to give them notice of previous claims, liens, or conveyances; and probably, as between the complainant and George W. Bush, the recording act has very little application. It is another well established principle, also, that although a prior lien or conveyance is not recorded, yet, if a subsequent purchaser has notice of its existence, though unrecorded, he takes subject to such prior claim.

In this case, if George W. Bush's testimony is to be admitted, it would appear that the complainant was well informed of the whole circumstances, and in such a manner as clearly to give to the defendant Horace Bush, the prior lien. The complainant insists that he is not a competent witness; or if so, that his testimony is inconsistent with the other known facts and irreconcilable with itself, and that it cannot be admitted, inasmuch as it will vary the effect of written instruments by parol proof. I can see nothing in this case to make the witness incompetent. The case of Van Rensselaer vs. Stafford, (1 Hop-

April, 1841.

Douglass
v.
Peele and
others.

kins' Rep. 569,) is quite similar to this, where the mortgagee was examined as a witness, and the admissibility of his deposition objected to. The Chancellor does not decide directly upon this point but in his opinion he refers to facts that must have been derived from the mortgagee's testimony. I therefore infer that it was received—in other words, that he was a competent witness. This mortgagee, having parted with all his interest in both mortgages, I conceive to be competent as a witness. I see no reason, either, to discredit him from his own statement, comparing that statement with all the other facts in the case; and he certainly is not discredited by any other testimony.

Parol testimony cannot be introduced, it is true, generally, to vary the terms of any written agreement, to alter or modify a contract in writing; but it is competent to introduce parol evidence to show the purpose with which an instrument was executed, to show facts *dehors* the instrument, which may materially vary its legal effect. Thus, parol evidence may be given to show usury in a bond and mortgage, and the usurious intent, which, though it does not show a contradiction or variance in the instrument, in legal effect renders them null. Parol evidence may be given to show notice of a prior equity, a deed unregistered, and many other things, which will very materially vary the available legal rights of the party claiming under such instrument. In this case, the testimony of George W. Bush was not introduced to contradict or vary any of the instruments executed either to or by him; but simply to show the knowledge of the complainant of all the circumstances connected with the transaction. From this it appears

that the complainant knew that the land was the pro-
perty of Horace Bush, though the title was in his
son—that twenty-five hundred dollars was to be se-
cured upon the land for his benefit, as the first lien—
and that the mortgage for that amount was recorded
first, with the complainant's knowledge, to secure
that object. He knew the purposes for which both
mortgages were to be executed, and how they were
to be assigned, and for what purpose, and which was
to be deemed the elder. With all this knowledge,
the complainant received his assignment—he still re-
tains this mortgage—no innocent assignee of his,
without knowledge, is to be affected. There is a
natural equity in favor of Horace Bush's mortgage,
as being for the purchase money, to secure it to the
real owner of the land, of which ownership the com-
plainant had full notice. (1 Hopkins, 569.) The
mortgage of the complainant was given merely for
his assistance in procuring the sale of the land ; and
it was assented to by him that it should be deemed
the second or junior lien. It was actually made such
upon the records ; and I cannot consent that he shall
come in and have the first lien, or even a *pro rata*
claim with Horace Bush. He must remain where
he was placed by his own assent and agreement in
the first place, second to the mortgage of Horace
Bush.

George W. Bush acted improperly in applying the
moneys which he received upon the larger mortgage,
to his own use, instead of remitting it to his father;
but that is a matter solely between the father and
the son. It has produced no injury to the complai-
nant. The conclusion to which I have come, shows
that the complainant was wrong in making Horace

April, 1841.

Douglass
v.
Peele and
others.

Bush a party defendant, as a subsequent incumbrancer, inasmuch as his incumbrance was, in point of fact, prior to that of the complainant. The complainant must therefore be personally charged with the costs of the defendant Horace Bush, if the mortgaged premises do not sell for sufficient to pay his mortgage and his costs in this suit. (6 Paige, 635.) The testimony has all been taken before a master in this cause, and he has reported upon all the facts necessary to be before the court, to pronounce a decree of sale. There will, therefore, be no necessity for any farther reference.

The decree must be for a sale of the mortgaged premises; and the master making the sale, is to pay out of the proceeds of such sale, first, to the defendant Horace Bush or his solicitor, the sum of $1,562 18, with interest from December 1, 1840—that being the amount due on his mortgage, as computed by the master; second, to pay the costs of the defendant Horace Bush, for his defence of this suit; third, to pay to the complainant the sum of $1,632 77, with interest from December 1, 1840—that being the amount due on his mortgage, as computed by the master; fourth, the complainant's costs of this suit.

It must also be provided, if the premises do not produce sufficient to pay the mortgage of the defendant Horace Bush, with his costs of this suit, that said Bush have a personal decree against the complainant for such costs, or any deficiency in such costs, and also have execution therefor.